[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12640

_____

D.C. Docket No. 9:14-cr-80209-DTKH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JACOBI TAVARES HUNTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 26, 2016)

Before WILSON and JULIE CARNES, Circuit Judges, and MOORE,* District
Judge.

_____

  * Honorable William T. Moore, United States District Judge for the Southern District of
Georgia, sitting by designation.

WILSON, Circuit Judge:

Jacobi Hunter appeals his 60-month sentence, imposed after he pleaded guilty to drug-related charges pursuant to a written plea agreement. On appeal, Hunter contends that the government breached the plea agreement by failing to recommend a reduction for acceptance of responsibility at sentencing. We agree. Hunter was induced to plead guilty to all charges against him based, in part, on the promise that the government would recommend the reduction on his behalf. The government not only failed to recommend the reduction at sentencing, but also objected to and argued against Hunter receiving the reduction based on facts it knew prior to offering the plea deal. This conduct constitutes a breach of the agreement entered into by the parties. Accordingly, we vacate Hunter's sentence and remand to the district court for resentencing.

## I. BACKGROUND

A federal grand jury indicted Hunter on four charges of possession with intent to distribute marijuana, cocaine, crack cocaine, and heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C)–(D). These charges arose from a traffic stop, wherein officers had stopped Hunter for illegal window tint on his vehicle, and, after detecting marijuana, ordered Hunter out of his car and frisked him. Hunter filed motions to dismiss and to suppress the evidence obtained during the stop, which the district court heard and denied.

2

During the hearing on those motions (the "suppression hearing"), which took place on February 4, 2015, with both parties present, the district court explicitly found that Hunter's testimony regarding some of the facts leading up to the traffic stop was not credible. Specifically, the officers had testified that Hunter was driving south on Congress Avenue and had oversteered into a right turn onto west Blue Heron Boulevard when they pulled him over for his illegal window tint, but Hunter testified that he was driving west on Blue Heron Boulevard, not Congress Avenue, and had not oversteered. Acknowledging these factual discrepancies, the district court found that "Hunter's testimony [wa]s not credible in this regard."

After the suppression hearing, the government extended a plea deal. The written plea agreement provided that Hunter would plead guilty to all four charges brought against him, with the following relevant stipulation (the "acceptance-of-responsibility reduction"):

> The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to [§] 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease . . . stating that the defendant has assisted authorities in the investigation or prosecution of her [sic] own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid

3

preparing for trial and permitting the government and the
Court to allocate their resources efficiently.

Hunter accepted this deal and, on March 4, 2015, pleaded guilty at a change-of-plea hearing in the district court.

The United States Probation Office prepared a presentence investigation report (PSI) that included a two-level increase for obstruction of justice and did not include a reduction for acceptance of responsibility.  Hunter submitted several objections to the PSI, including objections to the enhancement for obstruction of justice and the failure to include an acceptance-of-responsibility reduction.  The government did not request the reduction for acceptance of responsibility.  Instead, the government filed a motion seeking an upward departure or variance from the recommended guidelines range.  In response, Hunter filed a motion seeking a downward variance due to, *inter alia*, the physical and mental harm he allegedly suffered during his arrest.

At sentencing, Hunter objected to the exclusion of the acceptance-of-responsibility reduction from the PSI, arguing that the government's failure to recommend the reduction was a violation of the plea agreement.  The government again did not recommend the reduction.  Instead, it officially objected to Hunter receiving the reduction and argued for an enhancement.  The government maintained that it was not obligated by the plea agreement to seek a reduction for acceptance of responsibility if the court concluded that Hunter had obstructed

4

justice by committing perjury during his suppression hearing, even though the hearing took place before the plea deal was offered. Arguing that this failure to recommend the reduction constituted a breach, Hunter sought specific performance by the government and to have the case reassigned to another judge.

The district court found that the government had not breached the plea agreement, but it expressed concern that "the Government seems to give with one hand and take back with the other, because a defendant . . . would believe if he signed this agreement that he was going to get the acceptance of responsibility." Thus, the district court held it would give Hunter the acceptance-of-responsibility reduction to "solve this," recognizing that "the decision to plead guilty is an enormously important decision." The government subsequently conceded that, given the district court's ruling, Hunter was "probably" entitled to a three-level reduction. The government then argued its motion for an upward departure or variance. In light of its rulings during the hearing, the court recalculated the applicable guidelines range as 18 to 24 months' imprisonment. Over Hunter's objections, the district court imposed a 60-month sentence. This appeal followed.

## II.  DISCUSSION

As a threshold matter, Hunter's conditional plea agreement reserved the right to appeal only the denial of his motion to suppress physical evidence and waived other challenges. However, an appeal waiver does not bar a defendant's

5

claim that the government breached the plea agreement. *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015); *United States v. Gonsalves*, 121 F.3d 1416, 1419 (11th Cir. 1997). Thus, we may consider Hunter's appeal.

Hunter preserved his objection to the purported breach of the plea agreement in the district court, and the parties agree on the facts material to this appeal. Accordingly, we must determine only whether the government's undisputed conduct breached the plea agreement. We review this legal issue de novo. *United States v. Copeland*, 381 F.3d 1101, 1104 (11th Cir. 2004). We first address whether the government breached its agreement with Hunter. Concluding that it did, we then turn to the appropriate remedy.

## A. Breach

"[A] plea agreement must be construed in light of the fact that it constitutes a waiver of substantial constitutional rights requiring that the defendant be adequately warned of the consequences of the plea." *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990) (internal quotation marks omitted). "A material promise by the government, which induces a defendant to plead guilty, binds the government to that promise." *United States v. Thomas*, 487 F.3d 1358, 1360 (11th Cir. 2007) (per curiam) (citing *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971)). Hence, the government breaches a plea agreement when it fails to perform the promises on which the plea was based.

6

"Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." *United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992). We apply an objective standard to "decide whether the government's actions are inconsistent" with the defendant's understanding of the plea agreement, *Copeland*, 381 F.3d at 1105, rather than reading the agreement in a "hyper-technical" or "rigidly literal" manner, *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992) (internal quotation marks omitted).

In exchange for Hunter's promise to plead guilty to all four charges in his indictment, the government promised to recommend a reduction for acceptance of responsibility at sentencing. Yet, at sentencing, the government did not recommend the reduction. In fact, the government objected to and argued *against* Hunter receiving the reduction. Viewed objectively, "the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea."[1] *See Copeland*, 381 F.3d at 1105 (internal quotation mark omitted); *cf. United States v. Keresztury*, 293 F.3d 750, 756 (5th Cir. 2002) ("It is certainly inconsistent with a defendant's reasonable understanding of a promise *not* to contest a reduction for acceptance of responsibility for the government to add its

---

[1] The government's statement at the sentencing hearing that Hunter was "probably" entitled to the three-level reduction occurred *after* the district court had already ruled that it would give Hunter the reduction. This perfunctory, after-the-fact concession does not constitute the recommendation for which Hunter bargained.

7

voice *in support* of the PSI recommendation that the defendant receive *no* such reduction.").

It is clear that Hunter reasonably understood the government would recommend the acceptance-of-responsibility reduction on his behalf at sentencing. The promise to recommend the reduction was a key material concession made by the government in the plea agreement.[2]  The government did not drop any counts in the indictment or promise to make any other recommendations to the court that might potentially reduce Hunter's sentence.  And the government does not dispute that its promise to recommend an acceptance-of-responsibility reduction was a significant factor in Hunter's decision to accept the plea agreement and waive his right to a trial.  Consequently, Hunter waived his substantial right to have the government prove each charge against him beyond a reasonable doubt before a jury of his peers as part of the consideration for the government's promise to recommend the acceptance-of-responsibility reduction.  Thus, the government's failure to recommend the reduction violated the plea agreement reached by the parties.  *See Santobello*, 404 U.S. at 262, 92 S. Ct. at 499 ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can

---

[2] The only other concession the government made was to allow Hunter to enter a conditional plea permitting an appeal of the denial of the suppression motion, pursuant to Fed. R. Crim. P. 11(a)(2).  Hunter chose not to appeal the denial of his suppression motion, electing to appeal only as to breach and sentencing.

be said to be part of the inducement or consideration, such promise must be fulfilled.").

However, the government maintains that no reversible error exists because it was excused from recommending the reduction. Under the terms of the plea agreement, the government was released from its obligation to recommend the reduction if Hunter:

(1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct;

(2) is found to have misrepresented facts to the government prior to entering into this plea agreement;

(3) committed any act inconsistent with the acceptance of responsibility pursuant to USSG § 3C1.1; or,

(4) commits any misconduct after entering into this plea agreement . . . .

The government contends that the second exception (the "misrepresentation exception") and/or the third exception (the "inconsistent act exception") were met here. In support, the government points to the district court's explicit finding at the suppression hearing: the testimony by Hunter regarding which road his car was on and whether he crossed the safety line was not credible. Thus, on appeal, as before the district court, the government argues that the district court's credibility finding

9

at the earlier suppression hearing is the sole and sufficient basis for releasing the government from its obligation.

We are unpersuaded. Neither the misrepresentation exception nor the inconsistent act exception excuses the government from its obligation to recommend the acceptance-of-responsibility reduction: the government cannot avail itself of the exceptions based solely on facts of which it was aware prior to entering the plea agreement. Such a practice would render the government's promise to recommend the reduction illusory and defy a defendant's reasonable understanding of the plea agreement.

The district court expressly made its finding that Hunter's testimony during the suppression hearing was not credible *before* the negotiation of the plea agreement, in the presence of both parties. This undisputed fact is dispositive. At the time the government offered to recommend the reduction, it had full, current knowledge of Hunter's non-credible testimony. That cannot be sufficient to trigger either the misrepresentation exception or the inconsistent act exception. If, at the time it offered the plea agreement, the government was aware of facts that would allow it to employ the exceptions and avoid its promise therein, then it would be extending an illusory promise. The plea agreement—which is a contract between the parties—would fail from the outset due to a lack of valid consideration. We will not construe the agreement in this manner. *See, e.g.*, *M&G Polymers USA,*

10

*LLC v. Tackett*, 574 U.S. ___, ___, 135 S. Ct. 926, 936 (2015) (observing that courts are "instruct[ed] . . . to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract").

Moreover, a defendant would not have reasonably understood that the plea agreement allowed the government to evade its promise to recommend the acceptance-of-responsibility reduction. It has long been the rule in our circuit that the defendant's reasonable understanding of the agreement at the time of his plea controls our inquiry into the putative breach, *see, e.g.*, *Copeland*, 381 F.3d at 1105, but the government failed to offer any argument in its brief that Hunter reasonably should have understood that the government could opt out of recommending the reduction. Perhaps that is because this would be a tough argument to make: a defendant would *not* have reasonably understood that the government could renege on recommending the reduction. As discussed above, the government knew Hunter had given non-credible testimony at the suppression hearing before it drafted, offered, and executed the plea agreement in which it promised to argue for an acceptance-of-responsibility reduction. Likewise, at the time of receiving the proffered plea deal, Hunter knew the government was aware the district court found his testimony to be non-credible. Viewed objectively, Hunter would not have reasonably understood the terms of his plea agreement to mean he was

11

forfeiting a core constitutional right in exchange for a promise the government was already excused from fulfilling—in other words, an empty promise. *See In Re Arnett*, 804 F.2d 1200, 1203 (11th Cir. 1986) (per curiam) ("To constitute a valid waiver of substantial constitutional rights, a guilty plea . . . must be offered with sufficient awareness of the likely consequences." (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1468–69 (1970)).

Our conclusion as to Hunter's reasonable understanding of the agreement is bolstered by the timeline of events in this case. *See Rewis*, 969 F.2d at 988 (instructing reviewing courts to consider the plea agreement against the background of the plea negotiations). The plea bargaining process began directly after the suppression hearing. As Hunter's defense attorney recounted at the sentencing hearing, "as soon as . . . motions were concluded and the [c]ourt ruled [at the suppression hearing], [the Assistant United States Attorney (AUSA) representing the government] and I had a conversation where he agreed to prepare a plea agreement." Hunter soon thereafter accepted the agreement, entering his change-of-plea only one month after the hearing. Therefore, the district court made an explicit finding of non-credibility at the suppression hearing—with both parties present—*immediately* before the government offered the plea deal. No significant time elapsed between the district court's explicit finding of non-credible testimony and the government's proffer of a plea agreement premised on the

12

acceptance-of-responsibility reduction such that we could believe either party had overlooked or forgotten this finding.

Given that both parties were present when the district court explicitly found Hunter's testimony not to be credible, and that the government then offered to recommend a reduction if Hunter pleaded guilty, it was reasonable for Hunter to believe that the promised recommendation would be forthcoming, notwithstanding the pre-agreement conduct of which the government was well aware.  Indeed, the district court noted as much, stating: "[A] defendant . . . would believe if he signed this agreement that he was going to get the acceptance of responsibility."  Under the objective standard by which we evaluate plea agreements, this is precisely what renders the government's conduct a breach.  We disagree with the district court's conclusion to the contrary.

The government attempts to refute this conclusion by pointing to the text of the plea agreement.  To succeed on its argument, the government must convince us that, based on the language of the above-discussed misrepresentation exception and inconsistent act exception, Hunter reasonably should have known that the government was not required to recommend the reduction.  *See Copeland*, 381 F.3d at 1105.  We are not convinced.  The government's interpretation of the exceptions is in fact inconsistent with the text.

13

The misrepresentation exception states that the government is excused from its obligation if a misrepresentation "*is found*."  The government wants us to read this phrase as including misrepresentations that are "already known."  However, a more reasonable reading is that this clause anticipates later discovery of dishonesty.  *See Rewis*, 969 F.2d at 988 (noting that, to the extent any term in the agreement is ambiguous, we construe it against the government).  That is to say, the exception most reasonably covers a scenario where the government extends an offer, the defendant accepts, and the government only then discovers that the defendant had been dishonest during or prior to the plea negotiation.  In such a circumstance, we would have little trouble concluding that the government was excused from its obligation.  Yet, in the present case, there were no newly found misrepresentations; the government did not discover dishonesty or additional misconduct.  We cannot conclude that, based on a straightforward reading of this text, Hunter should have reasonably understood his earlier suppression hearing testimony to implicate this exception.  Consequently, the misrepresentation exception does not excuse the government from its obligation.

Separately, the inconsistent act exception excuses the government if Hunter "committed any act inconsistent with the acceptance of responsibility pursuant to USSG § 3C1.1."  The government contends that, under this exception, it was only required to recommend the reduction if the district court did not apply an

14

obstruction-of-justice enhancement based on Hunter's suppression hearing testimony. In other words, according to the government, it had the right to seek an obstruction-of-justice enhancement based on Hunter's earlier "inconsistent act" (or, to wait and see whether the district court made such a finding), and it only had to recommend the acceptance-of responsibility reduction if the court did not apply the enhancement.

This complicated interpretation of the exception is belied by the agreement's plain language. Nowhere does the agreement suggest that the government's promise to recommend the acceptance-of-responsibility reduction was contingent on some condition precedent, such as the district court failing to find an obstruction of justice.[3] If the government intended to condition its obligation to recommend the reduction on a specific ruling with regard to an obstruction enhancement, then it should have made that condition express. Moreover, we will not read the affirmative language that the government *will* recommend the reduction as intending to do the opposite—placing itself in an inconsistent position by hoping for the opposite of its promise, and only upon receiving an adverse

---

[3] In fact, even if the district court *had* found obstruction of justice, such a finding would not excuse the government from its obligation to recommend the acceptance-of-responsibility reduction: the Sentencing Guidelines explicitly anticipate that adjustments under both the obstruction enhancement and the acceptance reduction may apply in some cases. *See* U.S.S.G. § 3E1.1 n.4. Additionally, the record contradicts the government's argument. The transcript of the sentencing proceedings demonstrates that the government immediately and explicitly *objected* to Hunter receiving the acceptance-of-responsibility reduction. Thus, as a matter of both law and fact, the government's obstruction-of-justice argument is a non-sequitur.

ruling fulfilling the express promise it made to the defendant. This type of "heads I win, tails you lose" interpretation is incompatible with the plea bargaining process.

For these reasons, we are not persuaded that any language in the plea agreement excused the government from its obligation to recommend the acceptance-of-responsibility reduction at sentencing. The government referred to the exceptions paragraph in the plea agreement as its "escape clause." But to accept the government's argument is to accept that the government could make a promise it knew it did not have to keep; it could induce a guilty plea in exchange for nothing. That is not an escape clause—it is a trap door.

In sum, to obtain Hunter's guilty plea to all charges in the indictment, the government agreed to recommend a reduction for acceptance of responsibility. However, the government not only failed to recommend the reduction at Hunter's sentencing, but, in the face of Hunter's continued objection that this refusal constituted a breach of the plea agreement, the government persisted in actively and formally opposing the reduction. There is no viable excuse for this conduct; it constitutes a significant and deliberate breach of the plea agreement.

## B.  Remedy

When a breach of the plea agreement is established and an objection to the breach was preserved, "automatic reversal is warranted." *Puckett v. United States*,

556 U.S. 129, 141, 129 S. Ct. 1423, 1432 (2009) (citing *Santobello*, 404 U.S. at 261–62, 92 S. Ct. at 498–99).  In such circumstances, reversal is based "upon a policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining—an essential and highly desirable part of the criminal process."  *Id.*, 129 S. Ct. at 1432 (internal quotation marks omitted).  Since we conclude that the government breached the plea agreement and Hunter preserved his objection to that breach, reversal is required.

Additionally, Hunter is entitled to a remedy.  Under our precedent, "[t]here are two remedies available when a plea agreement is breached: (1) remand the case for resentencing according to the terms of the agreement before a different judge, or (2) permit the withdrawal of the guilty plea."  *Rewis*, 969 F.2d at 988–89; *see Boatner*, 966 F.2d at 1580.  The choice between these two remedies is within our discretion, although withdrawal of the plea is less favored in our circuit.  *See Jefferies*, 908 F.2d at 1527 (collecting cases favoring specific performance).

Hunter does not wish to withdraw his plea.  Instead, he requests remand and resentencing before a different judge.  Hunter's guilty plea was clearly induced by the government's promise to recommend an acceptance-of-responsibility reduction.  The government is therefore bound to that promise, and Hunter is entitled to specific performance of the terms of the agreement as he reasonably understood them at the time of his plea.  Accordingly, as it is within our discretion

17

to do, we remand for resentencing according to the terms of the agreement before a different judge. *See United States v. Tobon-Hernandez*, 845 F.2d 277, 281 (11th Cir. 1988) (exercising discretion "in favor of specific performance" and remanding "for resentencing by another judge in compliance with the plea agreement").

The government objects to this result, taking the position that, irrespective of breach, Hunter is not entitled to any remedy. In the government's view, Hunter already got exactly what he bargained for because the *district court* applied the acceptance-of-responsibility reduction. However, this position is irreconcilable with the Supreme Court's decision in *Santobello*. There, the Court reversed even though the district court had explicitly stated that the government's sentencing recommendation (which the Court found to be in breach of the parties' agreement) did not influence its sentencing decision. *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499. We similarly reverse where the district court disregarded the government's failure to recommend—and objection to—the acceptance-of-responsibility reduction.[4]

---

[4] The government's reliance on *Puckett* to claim Hunter must show the breach affected his sentence is inapposite. *Puckett* was decided under plain-error review and did not purport to overrule *Santobello* in the preserved-error context. *Puckett*, 556 U.S. at 140–41, 129 S. Ct. at 1432. To the contrary, *Puckett* reaffirmed the Supreme Court's holding in *Santobello* that "automatic reversal is warranted when objection to the government's breach of a plea agreement has been preserved." *Id.* at 141, 129 S. Ct. at 1432. And no binding precedent from either this court or the Supreme Court permits deviation from *Santobello* in the preserved-error context. Thus, for a breach that was objected to in the proceedings below, *Santobello* remains the controlling case.

18

Under *Santobello*, we are not concerned with whether the district court was influenced by the government's recommendation (or lack thereof); instead, our focus is on "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty." *Id.*, 92 S. Ct. at 499. The holding from and principles in *Santobello* are premised on the nature of the plea bargaining process.

As we have frequently noted in applying these principles, "the AUSA, *not the court*, violated the plea agreement; the sentencing judge's acts are not important to this issue." *United States v. Johnson*, 132 F.3d 628, 630 (11th Cir. 1998) (per curiam); *see Tobon-Hernandez*, 845 F.2d at 280 ("[W]e do not address the district court's exercise of discretion in imposing a sentence. Rather, we focus on the government's violation of its plea agreement."); *accord United States v. VanDam*, 493 F.3d 1194, 1204 (10th Cir. 2007); *United States v. Clark*, 55 F.3d 9, 13 (1st Cir. 1995) ("[E]ven if, as in this case, the sentencing judge indicates that the prosecutor's breach had no effect on the defendant's sentence, the defendant is still entitled to a remedy."). This makes sense; entering into a plea agreement forms a contract between the defendant and the government, and it is the defendant's rights that are violated when the government breaks its promises in the agreement. By agreeing to plead guilty pursuant to a plea agreement, the defendant waives his rights "*not in exchange for the actual sentence or impact on*

19

*the judge, but for the prosecutor's statements in court.*"  *Correale v. United States*, 479 F.2d 944, 949 (1st Cir. 1973) (emphasis added).

Neither Hunter nor the government could control how the district court sentenced Hunter.  That is, Hunter could not bargain for, and thus was never entitled to, the acceptance-of-responsibility reduction itself.  Hunter bargained for the government to stand before the district court and affirmatively *recommend* the reduction on his behalf.  What Hunter received instead was the government objecting to the reduction in the district court and arguing against the suggestion that Hunter was entitled to it.  Any actions by the district court thereafter are irrelevant to the breach and the remedy; the court can neither moot nor cure the government's breach.[5]

Thus, applying *Santobello*, we reject the government's argument that, because the district court applied the acceptance-of-responsibility reduction, no remedy for the government's breach is warranted.  Hunter bargained for—and is entitled to—the government's recommendation of the reduction on his behalf.  That is what he must receive when he is resentenced.  Accordingly, we remand for

---

[5] Although the district court cannot cure the government's breach of a plea agreement, the Supreme Court has opined that the *government* may be able to do so.  *See Puckett*, 556 U.S. at 140, 129 S. Ct. at 1432 (commenting that the government may be able to cure a breach if it "simply forgot its commitment and is willing to adhere to the [plea] agreement"); *see also United States v. Diaz-Jimenez*, 622 F.3d 692, 696 (7th Cir. 2010) (noting that the government might be able to cure a breach if it immediately and unequivocally adhered to the plea agreement upon objection).  Here, the government failed to brief and thus waived any argument that it acted to somehow cure the breach.  *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

20

resentencing before a different district court judge.  We do so, not due to lack of trust in the original sentencing judge's capacity for fairness, but to reestablish the trust between the defendant and the government that is essential to the plea bargaining process.

### III. CONCLUSION

"Because plea bargaining requires defendants to waive fundamental constitutional rights, we hold prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance."  *United States v. Riggs*, 287 F.3d 221, 224 (1st Cir. 2002) (internal quotation marks omitted).  In addition, the plea bargaining process "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances."  *Santobello*, 404 U.S. at 262–63, 92 S. Ct. at 499.  Such requisite standards and safeguards were not met in the proceedings below.  We find that the government breached its plea agreement with Hunter, and we reverse and remand for resentencing consistent with this opinion.[6]

**REVERSED** and **REMANDED**.

---

[6] Given that the breach of the plea agreement requires vacatur of Hunter's sentence, Hunter's additional challenge to the procedural reasonableness of his sentence is moot.