[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10673

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CLAY PUGH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:20-cr-00016-CDL-MSH-1

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Clay Pugh appeals his sentence of 84 months' imprisonment for possessing firearms in furtherance of a drug trafficking crime. On appeal, Pugh argues that some of the government's statements at sentencing implicitly advocated for an upward variance—despite the government's promise to recommend a downward departure that was made impossible by Pugh's mandatory minimum sentence—therefore breaching the terms of his plea agreement. Because Pugh failed to argue below that the government breached his plea agreement, we review for plain error. After careful review, we affirm.

## I.    BACKGROUND

On January 29, 2020, a police officer in Columbus, Georgia noticed a vehicle with illegally tinted windows. The officer had previously stopped the car a number of times, and was familiar with its owner, Rashad Thomas, as well as Clay Pugh, a regular occupant and the driver of the vehicle that day. The officer radioed for backup, and two marked police vehicles initiated a traffic stop. As an officer approached the vehicle, Pugh sped away, striking a minivan and leading officers on a highspeed chase through before crashing. Pugh fled the vehicle on foot, but officers eventually apprehended him in the backyard of a home.

During Pugh's arrest, officers searched his person and the vehicle. Officers recovered a plastic bag containing what they suspected to be cocaine base lying in plain view on the driver's seat, as well as a second plastic bag—containing approximately 6.15g of heroin and fentanyl, according to subsequent field testing—stashed in a cigarette box in the well of the driver's side door, and approximately .2g of test-confirmed methamphetamine in the passenger seat area. Further, officers discovered loose ammunition and two semiautomatic pistols on the front passenger floorboard, both loaded with rounds already chambered—a Bushmaster model Carbon-15 semiautomatic pistol on the driver's side floorboard and an HS Produkt model XDm-99 semiautomatic pistol in the center console.

A federal grand jury subsequently indicted Pugh on four counts: (1) one count of unlawful possession of firearms by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (3) one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (4) one count of possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

Shortly after Pugh was indicted, the United States District Court for the Middle District of Georgia enacted a temporary moratorium on jury trials until mid-July 2020 due to the COVID-

19 pandemic, which it subsequently extended into early 2021. During that time, Pugh entered into a written plea agreement with the government. In exchange for Pugh's pleading guilty to count four[1]—possession of a firearm in furtherance of a drug trafficking crime—and waiving most of his appeal rights, the United States agreed to a number of provisions, including four relevant to the present appeal: (1) to drop the remaining counts against him; (2) to apprise the district court of the extent of Pugh's cooperation, and, in the government's discretion, to consider whether any assistance completed prior to sentencing warranted a motion seeking a downward departure from the guidelines pursuant to 18 U.SC. § 3553(e) or U.S.S.G. § 5K1.1; (3) to recommend a downward departure if Pugh manifested responsibility;[2] and (4) to make a non-binding recommendation for a two-level downward departure pursuant to U.S.S.G. § 5K2.0(a)(2)(B) in exchange for Pugh's pleading guilty during the jury trial moratorium. The district court accepted Pugh's plea and scheduled his sentencing hearing for February 23, 2021.

The United States Probation Office then prepared a pre-sentence investigation report ("PSI"). The Probation Office concluded in the PSI that Pugh failed to accept full responsibility

---

[1] Pugh's plea agreement memorialized his understanding that count four carried a mandatory minimum sentence of five years' imprisonment.

[2] The government explicitly reserved the right to provide information to the district court showing that Pugh had not manifested responsibility.

for his actions because he remained involved in criminal activity and had not withdrawn from gang membership. Moreover, after determining that the applicable guideline for Pugh's crime was U.S.S.G. § 2K2.4—which recommends the statutory mandatory minimum term of five years' imprisonment—the Probation Office calculated a total criminal history score of 11, a criminal history category of V, and a guidelines sentence of 60 months imprisonment and between 24 and 60 months' supervised release. *See* 18 USC § 924(c)(1)(A).

Prior to Pugh's sentencing hearing, he was informed through his counsel that the district court was considering an upward variance from the guidelines sentence.

On February 23, 2021, the district court held Pugh's sentencing hearing virtually. Neither party objected to the PSI and its calculation of the guidelines range for Pugh's offense. The court noted for the record that Pugh had previously been notified that the court was considering an above guidelines sentence, before giving Pugh an opportunity to speak. Pugh's attorney then asked the court to impose the minimum guidelines sentence of 60 months' imprisonment.

The district court interrupted Pugh's counsel, to "describe for [him] [its] concerns about the guideline sentence in this case . . . ." The court explained that, because of the mandatory minimum, the same sentence "would apply in a case for a defendant who has no criminal record, who had the legal right to possess a gun . . . and

someone who was completely compliant during the arrest." The court emphasized that Pugh had "a criminal history that includes offenses that have shown an inclination to be dangerous to . . . other persons" and "dangerous previous criminal conduct," and "was a convicted felon who . . . was prohibited from possessing a gun; and . . . when he was arrested he eluded arrest by engaging the law enforcement in a chase that placed them and members of the public in danger." In light of those factors, the district court challenged Pugh's counsel to "explain . . . how it's rational for someone under those circumstances to receive the same exact sentence as someone who commits this offense with no criminal history, no gun prohibition, and no eluding of police during an arrest." Though Pugh's counsel pointed to the guidelines as imposing a uniform minimum without regard to aggravating factors, the court emphasized that the guidelines "are advisory and are just that. They are a guideline." Indeed, the court postulated that, "[i]f I didn't take those matters into account and just sentenced [Pugh] to 60 months, then I'm completely ignoring the circumstances that make this different than other cases, am I not?" Pugh's counsel responded that the guidelines prohibited a downward adjustment for someone without aggravating circumstances, too.

The court then asked the government to weigh in on a potential upward variance. The Assistant United States Attorney explained that the government "offered the 924(c) count because

[it] thought . . . it was an appropriate middle ground," for which courts typically impose a 60 month sentence.  She continued:

> Having said that . . . in all candor and for credibility purposes, I have to agree with the Court that Mr. Pugh's criminal history is concerning.  It does span 18 years.  And I would also add, typically with 924(c), the 60 months is the floor and not the ceiling.  And so based on the actual plea agreement, the mandatory minimum is 60 months, but the maximum could be up to life.  And so the Court could impose more time.

The AUSA went on to say:

> I want to be clear.  The government is not asking for life imprisonment.  However, we do understand if the Court was going to impose—excuse me—would vary upward based on the individual characteristics of Mr. Pugh.  Admittedly, his criminal history is concerning.  So we do not take a position, but we would defer to the Court in this particular regard.

After explaining that it had reviewed the PSI and recognized that Pugh's offense carried a five-year mandatory minimum, the district court announced that it found the advisory sentencing range "inadequate" based on the 18 U.S.C. § 3553(a) sentencing factors, "the nature and circumstances of [Pugh's] reckless conduct in this offense," Pugh's "significant and dangerous criminal history

and his personal history," and "his eluding of police officers during his arrest which placed them in danger as well as the general public." Accordingly, the district court applied an upward variance to the guidelines range and sentenced Pugh to 84 months' imprisonment. Pugh timely appealed.

## II.    ANALYSIS

### A. *Standard of Review*

We review for plain error the district court's acceptance of a plea agreement that the government allegedly breached when the defendant failed to object to the plea agreement in the district court. *United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008). To prevail under plain error review, the defendant bears the burden of demonstrating that the district court (1) plainly (2) erred (3) in a way that affected his substantial rights. *United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020). Even if he makes that showing, we may remedy the error only where it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

An error is plain only if it is clearly established under current law. *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005). Hence, an error cannot be plain without clear precedent from this Court or the Supreme Court directly resolving the issue. *United States v. Sammour*, 816 F.3d 1328, 1337 (11th Cir. 2016). Further, in the plea agreement context, not all breaches are clear or obvious:

when the scope of the government's commitment is open to doubt or the government has a colorable excuse for nonperformance, the error may not be plain. *See Puckett v. United States*, 556 U.S. 129, 143 (2009).

### B.    *Pugh cannot establish prejudice and, therefore, plain error.*

At the outset, we note that Pugh did not waive his right to appeal his sentence in this case.  In the plea agreement, Pugh waived his right to appeal his sentence in most situations, but not "in the event that the District Court imposes a sentence that exceeds the advisory guideline range as that range has been calculated by the District Court at the time of sentencing." Moreover, even if Pugh had waived his appeal rights in this case, "an appeal waiver does not bar a defendant's claim that the government breached the plea agreement."  *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016).  Accordingly, Pugh's appeal is properly before us.

Pugh argues that the district court erred by accepting the plea because the government not only breached its agreement to recommend a downward adjustment in exchange for his guilty plea during the jury trial moratorium, but, in fact, went a step further by encouraging the court to impose an above-guidelines sentence.  Although Pugh recognizes that the mandatory minimum precluded the government from recommending a downward departure, he maintains that we are bound to interpret

his plea agreement in a way that does not render the government's promises illusory. And, according to Pugh, reading the agreement to permit the government to advocate for an above-guidelines sentence would do just that.

But our stringent requirements on plain error review require more than a demonstration of error. Hence, we need not consider whether the district court erred by accepting the plea agreement because he cannot demonstrate that any purported breach prejudiced him.[3]

In the context of a plea breach, a defendant's substantial rights are affected if the defendant's sentence was affected by the breach. *Puckett*, 556 U.S. at 142 n.4. Consequently, a defendant must show a reasonable probability that his sentence would have been different without the breach. *See United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005). But if the effect of a plain error on sentencing is uncertain, requiring us to speculate about its effect, then the defendant necessarily fails to meet his burden on appeal. *See id.* at 1301.

Consider *United States v. Romano*, in which we held that the district court committed plain error in accepting a plea agreement after the government breached its terms. 314 F.3d 1279,

---

[3] Likewise, because Pugh's 924(c) offense carries a mandatory minimum sentence of 60 months' imprisonment, he cannot demonstrate that the government's failure to recommend a downward departure adversely affected his rights.

1281–82 (11th Cir. 2002). Pursuant to a plea agreement with the defendant, the government agreed to drop the latter of two counts in the indictment and not to oppose the defendant's requests for a specific base offense level. It also agreed that only two specific upward adjustments would apply. *Id.* at 1280. Although the PSI set the agreed-upon base offense level and applied the two upward adjustments to which the defendant had agreed, it also applied two additional two-level increases based on the count that the government had agreed to dismiss in exchange for the defendant's guilty plea. *Id.* Later, at sentencing, the prosecutor recognized that the parties had agreed to dismiss the second count—the predicate for the additional upward adjustments—and, yet, "[t]he prosecutor nonetheless *urged* the court to apply the enhancements, and the court did so."[4] *Id.* at 1281 (emphasis added). Unsurprisingly, we held that the upward adjustment necessarily prejudiced the defendant at sentencing, resulting in plain error. *Id.* at 1282.

Juxtaposing *Romano* with Pugh's case reveals an important distinction between them: who initiated the conversation about a longer sentence than the plea agreement contemplated. Whereas, in *Romano*, the government took the initiative in deviating from

---

[4] Additionally, "the prosecutor urged the court to depart upwardly from the Guidelines sentence range (recommended in the PSI) on the ground that 'a criminal history category of five does not adequately represent the defendant's prior criminal conduct . . . .'" After saying this, the prosecutor proceeded to argue at length (in five pages of the sentencing transcript) why the court should depart." *Id.* at 1281.

the plea agreement, the court did so in this case. The record in Pugh's case makes it clear that, prior to sentencing, the district court wanted a longer sentence—it notified him of its intent to consider an upward departure from the sentencing guidelines based on history and behavior. The court then questioned Pugh's counsel at sentencing, expressing its extreme skepticism of the appropriateness of the mandatory minimum. Finally, the court initiated the conversation with the prosecutor which is at issue in this appeal. While answering the court's questions, the prosecutor nonetheless continued to refer back to the plea agreement. Accordingly, Pugh cannot say that the government lobbied the court for an above guidelines sentence.

Meanwhile, Pugh fails to point to anything in the record suggesting that, but for the government's statements, he would have received a more favorable sentence. *See Puckett*, 556 U.S. 129 at 141–42 & n.4. And, "where the effect of an error on the result in the district court is uncertain or indeterminate—where we would have to speculate—the appellant has not met its burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice; he has not met his burden of showing that his substantial rights have been affected." *Rodriguez*, 398 F.3d at 1301.

Because Pugh cannot demonstrate prejudice, and therefore cannot establish plain error, we affirm.

**AFFIRMED.**