[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12855

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WALTER LUCAS,
a.k.a. Walter Steven Lucas,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cr-00168-TFM-N-1

_____

Before WILSON, LUCK, and EDMONDSON, Circuit Judges.

PER CURIAM:

Walter Lucas appeals his above-guidelines 60-month sentence after pleading guilty to possessing a firearm while under a protection order: a violation of 18 U.S.C. § 922(g)(8). On appeal, Lucas contends that the government breached the plea agreement by (1) failing to recommend a sentence at the low end of the advisory guidelines range, and (2) by presenting witness testimony that caused the district court to vary upwards. No reversible error has been shown; we affirm.

In February 2022, Lucas pleaded guilty pursuant to a written plea agreement.[1] In exchange for Lucas's guilty plea, the government agreed -- in pertinent part -- to recommend that Lucas "be sentenced at the low end of the advisory guideline range as determined by the Court." The plea agreement also provided that the government would "provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation." The agreement allowed both parties "to allocute fully at the time of sentencing."

_____

[1] We note that the plea agreement contained a waiver of Lucas's right to appeal his sentence but reserved expressly Lucas's right to appeal a sentence imposed above the advisory guidelines range. Lucas's appeal is thus properly before us.

Following Lucas's guilty plea, a probation officer prepared a Pre-Sentence Investigation Report ("PSI"). The probation officer determined that Lucas was subject to a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because he had possessed a firearm in connection with another felony offense: aggravated stalking. The probation officer calculated the advisory guidelines range as 37 to 46 months' imprisonment.

Lucas filed objections to the PSI. Among other things, Lucas denied that he had committed aggravated stalking and, thus, objected to the four-level enhancement under section 2K2.1(b)(6)(B).

On 12 August 2022 -- in accordance with the district court's local rules -- the government filed a notice advising the district court that the sentencing hearing would likely exceed thirty minutes. The government said it intended to call various witnesses to testify. To the extent Lucas maintained his objection to the PSI's guidelines calculation, the government said it would call between one and three witnesses to testify about facts supporting the section 2K2.1 enhancement. The government also said it intended to call one witness to testify about "problematic and concerning behavior" Lucas had engaged in after entering his guilty plea: conduct the government said was pertinent to the sentencing factors set out in 18 U.S.C. § 3553(a). Despite Lucas's alleged post-plea conduct, the government said that "[b]ecause the defendant does not appear to have violated the terms of his Plea Agreement, the United States will honor its obligation to recommend a sentence at the low-end of the Guidelines."

At the sentencing hearing, the government called four witnesses. Three of those witnesses -- Lucas's ex-wife (K.L.), K.L.'s neighbor (Jasmine Malone), and Officer Joshua Coleman -- testified about the events leading up to Lucas's arrest. Briefly stated, K.L. testified that she had obtained a protection-from-abuse order against Lucas, but that Lucas had continued to follow, harass, and intimidate her.

Malone testified that, on 6 September 2021, Lucas entered her backyard and appeared to be watching K.L.'s home over the fence. When Malone spoke to Lucas, Lucas talked about "getting back at her" and about "taking her to a warehouse and just tasing the hell out of her": comments Malone understood as referring to K.L. Based on Lucas's behavior and comments, Malone called 911. Malone testified further that Lucas entered her backyard several more times throughout the night and into the following morning. At one point, Malone could see on her security camera that Lucas had a gun in his waistband.

K.L. testified that, on 6 September 2021, Lucas twice visited her home in violation of the protection-from-abuse order. The police were called both times: once by the neighbor and once by K.L. Early in the morning of 7 September, Lucas knocked on K.L.'s bedroom window while K.L. was sleeping. K.L. again called 911; Lucas left the property.

Following K.L.'s 911 call, Officer Coleman was dispatched to K.L.'s home. While Officer Coleman spoke with K.L., Lucas called K.L.'s cell phone about fifteen times. When K.L. answered the

phone at Officer Coleman's direction, Officer Coleman heard Lucas yelling, saying that he was coming over, and heard a single gunshot. Officer Coleman called for backup. Officers stopped Lucas's car about two houses away from K.L.'s home and took Lucas into custody. Then, during a search of Lucas's car, officers found two guns, ammunition, a flashlight, and a pair of binoculars.

The government also called Lucas's cellmate of two months, Monroe Mahoney. Mahoney testified that Lucas talked frequently about making K.L. "pay" for what she did to him, about his stalking of K.L., and about his violent fantasies about harming K.L. At one point, Mahoney told Lucas falsely that he could arrange to have K.L. killed. Mahoney said Lucas expressed interest and began planning the details of the arranged killing: plans that included shooting K.L.'s son in front of her and then allowing Lucas to dismember K.L.'s body.

At the end of the sentencing hearing, the district court overruled Lucas's objection to the four-level enhancement and adopted the PSI. Without asking the government for a recommended sentence, the district court sentenced Lucas to 60 months' imprisonment. The district court credited the testimony of the government's four witnesses and found Lucas's testimony not credible. Based on the hearing testimony, the district court was convinced that Lucas intended to harm K.L.; and the court was concerned for K.L.'s safety. The district court explained that the circumstances involved in this case were more serious than the typical section 922(g)(8) case. The district court concluded that an upward

variance was necessary to reflect the seriousness of the offense, to provide adequate deterrence, and to protect K.L. from future harm.

Lucas objected, arguing that the government had failed to recommend a sentence at the low-end of the advisory guidelines range and had, thus, breached the plea agreement. The district court overruled the objection, stating that "[t]he government made its recommendation" and that the court "knew what the government's recommendation was prior" to announcing the sentence. The district court also said that the government had "complied with not only the letter but the spirit of the plea agreement."

Whether the government breached a plea agreement is a question of law that we review *de novo*. *See United States v. Copeland*, 381 F.3d 1101, 1104 (11th Cir. 2004).

We construe a plea agreement "in light of the fact that it constitutes a waiver of substantial constitutional rights requiring that the defendant be adequately warned of the consequences of the plea." *See United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016). When the government makes a material promise that induces a defendant to plead guilty, the government is bound by that promise. *Id*.

"Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." *Id*. "We apply an objective standard to 'decide whether the government's actions are inconsistent' with the

defendant's understanding of the plea agreement." *Id.* (citations omitted).

Contrary to Lucas's assertion, the record demonstrates that the government *did* actually recommend a sentence at the low end of the guidelines range.  The government did so in writing in its 12 August 2022 notice.  The plea agreement contained no express language about the method or manner of the government's recommendation on sentencing: only that the government recommend a low-end sentence.  The government's written recommendation satisfied the reasonable understanding of its obligation.  That the government did not also make an oral recommendation at the sentencing hearing constitutes no breach of the plea agreement.  The district court also confirmed that it understood the government's recommended sentence and had taken that recommendation into consideration.

Nor is there evidence that the government's failure to offer an oral recommendation was inconsistent with its obligations under the plea agreement.  At the sentencing hearing, the government made no statements in favor of an upward variance or that otherwise conflicted with its earlier recommendation for a low-end sentence.  The government failed to make an oral recommendation solely because the district court announced the sentence

without first giving the government an opportunity to present argument about the appropriate sentence.[2]

We also reject Lucas's argument that the government breached the plea agreement by presenting damaging witness testimony. First, the plea agreement contained no limitation on the testimony and evidence that could be presented at the sentencing hearing. The plea agreement provided expressly that both parties were free to allocute fully.

Moreover, the government presented the testimony of three of its witnesses -- K.L., Malone, and Officer Coleman -- in response to Lucas's own objection to the section 2K2.1 enhancement. Given Lucas's objection, the government bore the burden of presenting evidence sufficient to support the enhancement: evidence that would show that Lucas had possessed a gun in connection with an aggravated-stalking offense. *See United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999) ("The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement."). Nothing in the plea agreement can be construed reasonably as limiting the government's ability to present evidence and argument about the proper calculation of the advisory guidelines range.

The government also determined reasonably that it was obligated to make the district court aware of Lucas's post-plea

---

[2] On appeal, Lucas raises no substantive argument challenging the district court's hearing conduct or announcement of sentence.

22-12855              Opinion of the Court                    9

conduct by presenting Mahoney's testimony.  The government's decision was consistent with the terms of the plea agreement, which required the government to provide information about Lucas's "conduct and background" that might inform the sentencing decision.

Lucas has failed to show that the government breached the terms of the plea agreement.  We affirm.

AFFIRMED.