[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14020

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

VOLTAIRE PETER PIERRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:19-cr-00052-SDG-1

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Voltaire Pierre appeals his convictions and 97-month total sentence, stemming from a plea agreement he entered into with the government. He argues for the first time on appeal that the government breached the plea agreement by requesting or endorsing an upward adjustment for abuse of a position of trust, *see* U.S.S.G. § 3B1.3, which was not among the agreed-upon provisions in the plea agreement. After careful review, we conclude that Pierre has not met his burden of showing that any breach was sufficiently clear or obvious to warrant relief on plain error review, so we affirm his convictions and sentence. We vacate and remand for the limited purpose of correcting a clerical error in the judgment.

## I.

From June 2018 to October 2018, while working as a correctional officer at Hays State Prison, Pierre smuggled drugs and contraband into the prison and distributed these things to inmates in exchange for cash. After his arrest, he was charged in a two-count information with conspiring to possess with intent to distribute methamphetamine and cocaine, *see* 21 U.S.C. § 846, and possessing with intent to distribute methamphetamine on premises where children are present or reside, *see* 21 U.S.C. §§ 841(a)(1), 860a.[1]

---

[1] Packages containing drugs, including cocaine base and methamphetamine, were delivered to and kept at Pierre's residence, where a minor child resided.

Pierre pled guilty to both counts under a negotiated plea agreement with the government. In the agreement, the parties agreed to certain guideline and sentencing issues, including that the applicable offense guidelines were U.S.S.G. § 2D1.1(a)(5) and (c), and that Pierre should receive upward adjustments under § 2D1.1(b)(4) and (14)(B). The government also agreed to recommend offense level reductions for acceptance of responsibility, § 3E1.1, and the safety valve, § 2D1.1(b)(18), and to "recommend that [Pierre] be sentenced at the low end of the adjusted guideline range." No specific offense levels or guideline ranges were set forth in the agreement.

The parties also agreed "not to request any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement," and that the "recommended sentence set forth in this Plea Agreement is reasonable under the factors set forth in 18 U.S.C. § 3553(a)." Nonetheless, they acknowledged that the recommendations and guideline calculations in the plea agreement were "not binding on the Court," and that the court's decision not to follow the agreement "will not constitute grounds to withdraw [the] guilty plea or to claim a breach of [the] Plea Agreement." Finally, the agreement contained a waiver of Pierre's appellate rights in most circumstances.

The district court accepted Pierre's guilty plea at a hearing in October 2019. During the plea colloquy, Pierre confirmed his understanding that the district court was not bound by the plea

agreement with regard to the calculation of the guideline range or the choice of sentence.

A probation officer prepared a presentence investigation report ("PSR") to aid the district court at sentencing. Notably, the PSR's guideline calculations included a two-level upward adjustment for abusing a position of trust under § 3B1.3. That recommended enhancement was absent from the plea agreements. According to the PSR, Pierre abused a position of trust as a correctional officer "by smuggling drugs into the prison where he was entrusted with the care and security of the inmates housed therein." Based in part on that adjustment, the PSR calculated a total offense level of 33. Pierre had no criminal history, so the recommended guideline range was 135 to 168 months of imprisonment.

Neither party objected to the PSR. In accordance with the plea agreement, the government sought a reduction of five levels from the total offense level calculated in the PSR—that is, from level 33 to level 28. In an accompanying sentencing memorandum, the government summarized the PSR's guideline calculations, including the § 3B1.3 abuse-of-trust adjustment, and it requested a sentence at the low end of the modified guideline range of 78 to 97 months.

At sentencing, the district court adopted the government's five-level-reduction recommendation. It also adopted the PSR's factual statements and guideline calculations without objection. Thus, the court adopted the PSR's application of a two-level

increase for abuse of a position of public trust, ultimately arriving at a guideline range of 78 to 97 months.

The district court then invited argument on recommendations for a reasonable sentence. The government argued for a low-end 78-month sentence, asserting that the "state trusted Mr. Pierre to do the right thing and maintain security," but he instead "chose to smuggle drugs" to incarcerated gang members because he was "greedy," conduct which merited "serious punishment." Defense counsel spoke at length about mitigating factors, including Pierre's background and family and the financial stressors he faced in providing for three young children. Pierre allocuted, and the court heard testimony from Pierre's pastor.

The district court sentenced Pierre to a total of 97 months in prison, at the high end of the guideline range. The court discussed its consideration of the 18 U.S.C. § 3553(a) factors, including the seriousness of the offense conduct, the need for general deterrence, which it emphasized, and Pierre's personal history.

Pierre appeals, arguing for the first time that the government breached the plea agreement by endorsing the two-level abuse-of-trust enhancement, U.S.S.G. § 3B1.3, which was not listed in the plea agreement. Despite the appeal waiver in Pierre's plea agreement, "an appeal waiver does not bar a defendant's claim that the government breached the plea agreement." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016).

## II.

Ordinarily, we review *de novo* the question whether the government has breached a plea agreement. *United States v. Malone*, 51 F.4th 1311, 1318 (11th Cir. 2022). But where "as here, the defendant did not object before the district court that the government breached a plea agreement, we review on direct appeal for plain error." *Id.* Under plain-error review, we may correct a plain error that affected the defendant's substantial rights and the fairness or integrity of the judicial proceedings. *Id.* at 1319.

"For an error to be considered plain, the error must be clear or obvious, rather than subject to reasonable dispute." *United States v. Sosa*, 782 F.3d 630, 637 (11th Cir. 2015) (quotation marks omitted). It follows that not all breaches of a plea agreement "will be clear or obvious, such as when the drafting of an agreement leaves the scope of the government's commitments open to doubt." *Id.* (quotation marks omitted).

## III.

The government "breaches a plea agreement when it fails to perform the promises on which the plea was based." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016). We judge the government's actions "according to the defendant's reasonable understanding at the time he entered his plea." *Id.* (quotation marks omitted). "We apply an objective standard to decide whether the government's actions are inconsistent with the defendant's understanding of the plea agreement, rather than reading the agreement in a hyper-technical or rigidly literal manner. *Id.* (cleaned up).

In exchange for Pierre's promise to plead guilty to both charges in his indictment, the government agreed to certain guideline application decisions and promised "not to request any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement." This language, in Pierre's view, "amounted to a promise that the government would not seek, endorse, or argue for Guideline adjustments other than those specifically listed in the plea agreement." Pierre claims that the government violated this agreement by "endors[ing]," "recommend[ing,]" or "advocat[ing] for an upward adjustment (under § 3B1.3) that was not in the plea agreement."

We disagree. The government's actions were not plainly inconsistent with its promises in the plea agreement, such that we can grant relief under plain-error review. *See Sosa*, 782 F.3d at 638 ("[I]t was not 'clear under current law' that the government patently breached the plea agreements . . . or that any such breach should have been 'obvious' to the district court."). The PSR included the § 3B1.3 abuse-of-trust adjustment without any request or advocacy from the government. That adjustment was based on facts to which Pierre admitted in pleading guilty—that is, that he used his position as a correctional officer to smuggle drugs into the prison.[2] And it was applied by the district court, who was not

---

[2] The PSR offers no reason to believe that the adjustment was based on other, allegedly objectionable facts that the government supplied to the probation office, as Pierre contends.

bound by the plea agreement, without any objection or argument from the parties.

The record does not support Pierre's contention that the government requested, sought, endorsed, or argued for the § 3B1.3 adjustment in its sentencing memorandum or at sentencing. True, the government noted the PSR's guideline calculations in its memorandum, which it described as "applicable to" Pierre, and it failed to object or point out, either in the memorandum or at sentencing, that the § 3B1.3 adjustment was inconsistent with the plea agreement. But Pierre does not assert that the plea agreement obligated the government to object to a new adjustment. Nor does he claim that the government breached the agreement by merely "remaining passive" or failing to object. So these instances of the government's having "remain[ed] passive" or it failure to object to the PSR are not sufficient, without more, to establish a clear breach of the plea agreement.

Pierre also highlights the government's argument for a sentence at the low end of the guideline range that the PSR recommended and the district court adopted at sentencing—that is, the range that included the § 3B1.3 adjustment. He casts the government's argument under the § 3553(a) factors as an adoption or endorsement of the § 3B1.3 adjustment, actions inconsistent with its promise not to request any guideline adjustment not in the plea agreement.

But the government, in its arguments for a reasonable sentence, did not advocate a position that would have had any effect

on Pierre's guideline range or that would have "requir[ed] a longer sentence than it had agreed to recommend." *United States v. Taylor*, 77 F.3d 368, 371 (11th Cir. 1996). Rather, the government cited Pierre's abuse of trust as a reason for imposing a sentence at the low end of the adjusted guideline range, consistent with its "Specific Sentence Recommendation" promise in the plea agreement to "recommend that [Pierre] be sentenced at the low end of the adjusted guideline range."

While Pierre believes that the government "should have recommended 63 months, the low end of the Guideline range *without the § 3B1.3 adjustment*," he fails to explain why the plain terms of the plea agreement demanded that recommendation. Pierre does not contend that he reasonably understood the Recommendation promise as requiring a recommendation for a sentence at the low end of the guideline range contemplated by the plea agreement, as opposed to the range calculated by the district court at sentencing. Instead, his argument is that the government violated an unambiguous requirement "to recommend no other Guideline adjustments other than those listed in the agreement." For the reasons already explained, though, it is not clear or obvious that the government acted inconsistently with that promise.

None of the cases on which Pierre relies establishes plain error in this case. In *Boatner*, *Taylor*, and *Malone*, we held that a breach occurred where the government took a position, in response to a defendant's PSR objection, that was directly at odds with a promise in the plea agreement. In *United States v. Boatner*,

the government stipulated that the defendant was responsible for a certain drug quantity, but it then "attempted to bolster" the PSR's higher drug quantity by declaring that its later investigations supported the PSR. 966 F.2d 1575, 1579 (11th Cir. 1992). Likewise, in *Taylor*, the government promised to recommend a sentence of ten years but then supported the PSR's position on relevant conduct, which required a sentence of at least 151 months under the then-mandatory guidelines. 77 F.3d at 370–71. And in *Malone*, the government promised to recommend a reduction for acceptance of responsibility but then took the opposite position at sentencing. 51 F.4th at 1317, 1320–21.

Here, in contrast, Pierre did not object to the PSR, and so the government was not asked to provide, nor did it offer, any argument or evidence about the application of the § 3B1.3 adjustment. Had Pierre's counsel objected to the PSR, this would, in several respects, be a different case. But on the current record, we cannot say that any breach of the plea agreement by the government was "clear or obvious, rather than subject to reasonable dispute." *Sosa*, 782 F.3d at 637.

For these reasons, we conclude that Pierre has not shown that any error was sufficiently "plain" to warrant relief on plain-error review. Accordingly, we do not consider his remaining arguments relating to whether the error affected his substantial rights or the fairness and integrity of the proceedings.[3]

---

[3] As part of his argument on these points, Pierre contends that the district court made several other sentencing errors, including focusing on general

Finally, although we affirm Pierre's convictions, we vacate and remand for the limited purpose of allowing the district court to correct a clerical error in the judgment. *See United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006) ("We may *sua sponte* raise the issue of clerical errors in the judgment and remand with instructions that the district court correct the errors."). The judgment lists the nature of the offense under 21 U.S.C. § 860a as "DISTRIBUTE IN OR NEAR SCHOOLS/CONTROLLED SUBSTANCE," but that description pertains to 21 U.S.C. § 860(a), rather than § 860a, the statute of conviction. Accordingly, we remand with instructions to correct the judgment's erroneous description of the nature of the offense.

**AFFIRMED in part; VACATED and REMANDED in part.**

---

deterrence to the exclusion of other pertinent § 3553(a) factors. Perhaps due to the appeal waiver in his plea agreement, though, Pierre does not raise these arguments as independent grounds for vacating the sentence, so we do not address them as such.