# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-1187

_____

United States of America

*Plaintiff - Appellee*

v.

Chauncey Brockman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: December 14, 2018
Filed: May 20, 2019

_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

_____

SMITH, Chief Judge.

Chauncey Brockman pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Before sentencing, the United States Probation Office filed a presentence investigation report (PSR) recommending a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearm in connection with the felony offense of drug trafficking. Brockman made

several objections to the PSR findings. He also filed multiple pro se motions with the district court,[1] including a request to withdraw his guilty plea. At sentencing, the district court denied his motions and upheld the four-level enhancement. Over the government's objection, the court granted a two-level sentencing reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility. The government declined to move for, and the court refused to grant, a third level of reduction for acceptance of responsibility pursuant to § 3E1.1(b). On appeal, Brockman challenges the court's imposition of the § 2K2.1(b)(6)(B) enhancement and its refusal to grant the § 3E1.1(b) reduction. We affirm the judgment of the district court.

## I. *Background*

On September 25, 2016, detectives with the Kansas City, Missouri Police Department were attempting to locate a suspect in a homicide investigation when they observed a man matching the suspect's description enter the passenger side of a vehicle. Police stopped the vehicle and ordered the man, later identified as Brockman, to get out and lie face down in the street. As Brockman complied, an officer heard a noise that sounded like metal hitting the ground and believed it might be a firearm.

Brockman told the officer he had a gun. The officer, without incident, removed a handgun from Brockman's front pocket. After a computer check revealed that Brockman had a prior felony, he was placed under arrest for being a felon in possession of a firearm. The handgun was identified as a stolen .40-caliber Smith & Wesson semiautomatic.

Brockman had a strapped duffel bag hanging around his neck. The officer smelled an odor of marijuana coming from it. Police inventoried the duffel bag and found an extended .40-caliber magazine, compatible with the handgun and loaded

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

with four rounds of live ammunition, and 40 clear plastic bags containing approximately 241 grams of marijuana. Police found an additional two bags of marijuana, weighing 2.5 grams, in Brockman's pants pocket.

On May 23, 2017, Brockman appeared before the district court and pleaded guilty to being a felon in possession of a firearm. The court found the guilty plea had been knowingly and voluntarily entered and directed the probation office to prepare a PSR. The PSR included a recommendation for a four-level enhancement of Brockman's base offense level under U.S.S.G. § 2K2.1(b)(6)(B), for "possess[ing] the firearm in connection with the felony offense of possession and/or possession with intent to distribute a controlled substance." PSR at 5, ¶ 14, *United States v. Brockman*, No. 4:17-CR-00074 (W.D. Mo. Aug. 21, 2017), ECF No. 18.

Brockman submitted four objections to the PSR. First, he denied that he possessed the firearm "in connection with" another felony, in order to negate the four-level enhancement. Second, he denied possessing 40 clear plastic bags containing marijuana. Third, he denied four separate municipal offense convictions listed in the PSR. Lastly, he disputed the PSR's finding that he was serving a criminal justice sentence at the time he committed the instant offense. In response to his objections, the government directed a case agent to photograph and document in a report the number of bags of marijuana police had recovered. The government also obtained certified records of the disputed convictions and prepared two witnesses to give testimony at the sentencing hearing in support of its evidence.

Brockman also filed several pro se motions with the court. He filed a motion to withdraw his guilty plea, claiming that he had pleaded guilty under duress and without full knowledge of the consequences of his plea. He moved to withdraw his appointed defense counsel for inadequate representation. In another motion, he requested a copy of all discovery materials so that he could review his case. Just prior to the sentencing hearing, Brockman filed yet another pro se motion requesting

additional time to file pretrial motions and to appear pro se before the court. He claimed his attorney had ignored his requests to file a motion to suppress evidence and to hold an evidentiary hearing.

The court denied Brockman's pro se motions as meritless. Brockman ultimately decided to rely on his counsel's representation. When the court began to address his PSR objections at the sentencing hearing, Brockman withdrew his objection that he had not possessed the 40 bags of marijuana. He said he decided to concede the point after receiving photographs from the government that confirmed the PSR's claim. He maintained his objection, however, to the allegation that the firearm related to drug trafficking. He claimed he possessed the marijuana for his personal use only and occasionally shared marijuana with others without receiving any money.

In response, the government offered Brockman's interview statements made to detectives on the day of his arrest. In those statements, he admitted possessing both the firearm and the marijuana found on his person and in his duffel bag. Although he had stated the marijuana he possessed was for his personal use, he also described his usual practice as purchasing five ounces of marijuana, selling about half of it, and smoking the rest. The court upheld the four-level enhancement after finding Brockman possessed the weapon in connection with a distribution quantity of marijuana, packaged in a fashion reflecting an intent to distribute.

The government objected to giving Brockman any credit for acceptance of responsibility under § 3E1.1. In support, the government cited: (1) Brockman's denial of relevant conduct, which forced the government to expend extra time and expense in preparation for the sentencing hearing; and (2) Brockman's post-change-of-plea hearing motions, which the government argued were inconsistent with acceptance of responsibility.

The court acknowledged the futility of Brockman's post-plea actions: "I understand some of Mr. Brockman's desperation or search for some way to get some relief from what otherwise is a significant range of punishment that he's looking at; but, quite frankly, his efforts do fly in the face of reality." Sentencing Tr. at 24, *United States v. Brockman*, No. 4:17-CR-00074 (W.D. Mo. Feb. 2, 2018), ECF No. 40. Nonetheless, the court awarded him a two-level reduction under § 3E1.1(a) because it concluded that his actions were the result of "lack of acceptance of the law and not lack of acceptance of his guilt." *Id*.

The government did not move for the third level of reduction for acceptance of responsibility under § 3E1.1(b). Brockman objected, requesting that the court grant it anyway. The court surmised, "I guess that [the government's] position . . . would be that given Mr. Brockman's recalcitrance and arguments contrary to his plea in the case that he has not been totally forthcoming with the government and the government has been required to go to extra time and expense and preparation" for the sentencing hearing. *Id*. at 27. The government agreed with the court's surmise, then cited *United States v. Jordan*, to argue that Brockman's "denial of relevant conduct did not allow the government and the court to allocate their resources efficiently." *Id*. (quoting *United States v. Jordan*, 877 F.3d 391, 396 (8th Cir. 2017)).

The court denied Brockman the third level of reduction and added: "Quite frankly, I think the record would support not giving any reduction for acceptance of responsibility, but I'm going to give him the two-[level] reduction." *Id*. Based on its rulings, the court calculated a total offense level of 24 and criminal history category of IV, which yielded an advisory Guidelines range of 77 to 96 months' imprisonment. The court then sentenced Brockman to 96 months' imprisonment.

## II. *Discussion*

On appeal, Brockman challenges the application of the four-level enhancement under § 2K2.1(b)(6)(B) for possessing the firearm in connection with a drug

trafficking offense. He also asserts that the government improperly withheld its motion for the third level of reduction for acceptance of responsibility under § 3E1.1(b).

### A. *Felony Offense Enhancement*

The Guidelines provide for a four-level enhancement of a defendant's offense level when he "use[s] or possesse[s] any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). When the defendant has not been convicted of the other offense, the district court uses a preponderance of the evidence standard to determine whether the defendant committed the felony offense and whether the defendant's possession of the firearm could facilitate that offense. *United States v. Holm*, 745 F.3d 938, 940 (8th Cir. 2014). When the felony offense is drug trafficking, the Guidelines mandate application of the enhancement if the "firearm is found in close proximity to drugs . . . because the presence of the firearm has the potential of facilitating" the offense. U.S.S.G. § 2K2.1(b)(6)(B), cmt. 14(B). Brockman contests the district court's determination, which "is a factual finding that we review for clear error." *United States v. Smith*, 535 F.3d 883, 885 (8th Cir. 2008).

Brockman argues there was insufficient evidence to support the finding that he committed a felony drug trafficking offense. He asserts that he is a daily user of marijuana and that his possession of 243.5 grams of marijuana is consistent with daily use. He claims that the drugs in his possession were individually packaged in 42 bags because "[o]ccasionally he shares . . . marijuana without receiving any money." Sentencing Tr. at 18. He emphasizes the absence of scales, sales records, large amounts of cash, or prior drug trafficking convictions—evidence we have often considered significant when reviewing the sufficiency of drug trafficking evidence—to support his case. *See, e.g.*, *United States v. Bates*, 614 F.3d 490, 495 (8th Cir. 2010).

The intent to distribute controlled substances may be proven by circumstantial evidence and can be inferred after consideration of a variety of factors. *United States v. Shurn*, 849 F.2d 1090, 1093 (8th Cir. 1988). Among these factors are "[d]rug quantity and purity level, drug paraphernalia, prior sales, and the presence of cash or a firearm." *United States v. Thompson*, 881 F.3d 629, 632 (8th Cir. 2018) (quoting *United States v. Fetters*, 698 F.3d 653, 657 (8th Cir. 2012)). Packaging material also indicates an intent to distribute. *United States v. Finch*, 630 F.3d 1057, 1061 (8th Cir. 2011).

The district court determined that 243.5 grams—more than eight ounces of marijuana—is a distribution quantity of the drug. The court did not clearly err in so finding. *See, e.g.*, *United States v. Thompson*, 686 F.3d 575, 585 (8th Cir. 2012) (testimony from narcotics officer that 260 grams of marijuana was an amount "much greater than the up to 42 grams of marijuana that could be considered a 'user' quantity"); *United States v. Nolen*, 536 F.3d 834, 838 (8th Cir. 2008) (testimony from narcotics officers that 125.4 grams of marijuana "exceeded what would normally be associated with personal use, and was instead consistent with distribution"). In a post-arrest interview with law enforcement, Brockman admitted that "he usually buys 5 ounces of marijuana, he generally sells about half of it, and then smokes the rest." PSR at 4, ¶ 5. Even using Brockman's own "user-quantity standard," the district court could reasonably infer from this statement that eight ounces exceeded a user quantity.

The district court also determined that the drugs were packaged in a manner consistent with drug distribution. Brockman denies that his interview statement indicates that he intended to distribute the marijuana in his possession when arrested. But a reasonable factfinder could infer that the packaging he used supports an intent to distribute the drugs, whether or not he planned to profit thereby. *See United States v. Ironi*, 525 F.3d 683, 689 (8th Cir. 2008) (noting that "[g]iving drugs to others, even without receiving money in exchange, is distributing drugs under" federal law).

Brockman relies on a Sixth Circuit case for the proposition that the packaging of the drugs and the presence of the firearm "are equally consistent with the *purchase* of marijuana as they are with the *distribution* of marijuana and thus do not create a preponderance of evidence of [Brockman's] intention to distribute the drugs." *United States v. Woods*, 26 F. App'x 448, 451 (6th Cir. 2001). This precedent is not binding on this court, and its facts are easily distinguishable. In *Woods*, the defendant possessed 7.5 grams of marijuana in six small bags. The Sixth Circuit found that this quantity was consistent with personal use. *Id*. In contrast, Brockman was found with more than 32 times as much marijuana and seven times the number of bags.

The weight and packaging of the marijuana, combined with Brockman's statements and his firearm possession, constitute sufficient evidence to support the court's conclusion that he committed the felony offense of drug trafficking. Because the firearm was found in close proximity to the drugs, we find the district court did not clearly err in applying the four-level enhancement under § 2K2.1(b)(6)(B).

B. *Acceptance-of-Responsibility Reduction*

"This court reviews the district court's 'failure to grant a § 3E1.1(b) reduction' for clear error." *Jordan*, 877 F.3d at 393 (quoting *United States v. Moore*, 683 F.3d 927, 931 (8th Cir. 2012)). "We will not disturb a district court's decision to deny or grant a credit for acceptance of responsibility unless that decision is clearly erroneous" because "the district court is in a unique position to evaluate a defendant's acceptance of responsibility." *Moore*, 683 F.3d at 930–31 (quoting *United States v. Searcy*, 233 F.3d 1096, 1102 (8th Cir. 2000)). "We find clear error only when we are left with the definite and firm conviction that a mistake has been committed." *United States v. Fischer*, 551 F.3d 751, 754 (8th Cir. 2008) (internal quotation omitted).

The third level of reduction pursuant to subsection (b) is only available "upon a formal motion by the [g]overnment at the time of sentencing." U.S.S.G. § 3E1.1, cmt. 6. "The government should not withhold such a motion based on interests not

identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal." *Id.*; *see also* U.S.S.G. app. C amend. 775 (effective Nov. 1, 2013) (explaining that this statement's inclusion in the Guideline commentary resolves a circuit conflict regarding the appellate waiver issue). Brockman argues that this language prohibits the government from withholding a § 3E1.1(b) motion "merely because the defendant objects to the PSR." Appellant's Br. at 6. He asserts that the court should have granted him the third level because his conduct allowed the government and the court to "allocate their resources efficiently." U.S.S.G. § 3E1.1(b).

Because the record demonstrates that the government did not withhold the motion based on the PSR objections alone, we need not determine, as Brockman urges us to do, whether that justification alone runs afoul of Amendment 775 to the Sentencing Guidelines. The government cited Brockman's various post-plea motions, specifically the attempted withdrawal of his guilty plea, to support its objection to *any* reduction under § 3E1.1. "A defendant's attempt to withdraw his guilty plea may be evidence that he did not accept responsibility for his offense." *United States v. Rodriguez*, 741 F.3d 908, 912 (8th Cir. 2014) (quoting *United States v. Bastian*, 603 F.3d 460, 465 (8th Cir. 2010)). Indeed, we have said that after a defendant attempts to withdraw his guilty plea, he is "fortunate to receive a two-level reduction for acceptance of responsibility." *United States v. Smith*, 422 F.3d 715, 727 (8th Cir. 2005).

The plain text of the Guideline's commentary disallows withholding the motion "based on interests not identified in § 3E1.1," U.S.S.G. § 3E1.1, cmt. 6., but makes no distinction between § 3E1.1's two subsections. It follows that the government can properly withhold the motion based on any interest identified in § 3E1.1. *See United States v. Castillo*, 779 F.3d 318, 323 (5th Cir. 2015) ("The plain language of the commentary thus allows the government to refuse to file a § 3E1.1(b) motion based on an interest that is identified in § 3E1.1, without regard to which subsection

contains the interest."). Whether a defendant has acted in a manner inconsistent with acceptance of responsibility is clearly an interest identified in § 3E1.1. When the government has a legitimate basis for opposing any acceptance-of-responsibility reduction, "the district court's generous award of a two-level reduction [does] not compel the government to move for a third." *United States v. Gaye*, 902 F.3d 780, 789 (8th Cir. 2018). We therefore conclude that the government did not improperly withhold its motion.

Brockman bears the burden of proving that he is entitled to a reduction. *United States v. Kirlin*, 859 F.3d 539, 543–44 (8th Cir. 2017). Brockman contends his conduct allowed the court to allocate its resources efficiently and avers the court "*never* found that anything [he] filed or argued was 'frivolous,' 'false,' or in 'bad-faith.'" Appellant's Reply Br. at 3. In fact, the district court determined that his pro se motions were "without merit" and found "no meritorious basis for granting" them, Sentencing Tr. at 23; stated that "his efforts do fly in the face of reality," *id*. at 24; noted his "recalcitrance and arguments contrary to his plea," *id*. at 27; and concluded that "the record would support not giving any reduction for acceptance of responsibility." *Id.* The court spent nearly half of the sentencing hearing addressing Brockman's pro se motions.

We are not convinced that the district court erred in denying Brockman the third level; on the contrary, we find that he was fortunate to receive the court's "generous award" of the two-level reduction under § 3E1.1(a). *Gaye*, 902 F.3d at 789.

### III. *Conclusion*
We affirm the judgment of the district court.

———————————————