[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14254

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

YEISON SALAZAR ARIAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cr-00082-SCB-CPT-3

_____

Before ROSENBAUM, NEWSOM, and ABUDU, Circuit Judges.

PER CURIAM:

Defendant-Appellant Yeison Salazar Arias pled guilty to conspiring to import cocaine and heroin into the United States. Under Arias's plea agreement, the Government agreed, in its "sole[]" discretion, to recommend an acceptance-of-responsibility reduction, *see* U.S.S.G. § 3E1.1, if Arias complied with certain requirements. Also under that agreement, Arias waived his right to appeal his sentence, with only three exceptions.

At his sentencing hearing, Arias disclaimed several of his admissions in the plea agreement. As a result, the Government withdrew its support for the acceptance-of-responsibility reduction, claiming that Arias had testified untruthfully. Arias contends that the Government breached its plea agreement when it failed to seek the reduction at sentencing. He also challenges the district court's enhancement of his sentence for his role as a "manager or supervisor" in the drug-trafficking conspiracy. *See* U.S.S.G. § 3B1.1(b).

After careful consideration, we conclude that the Government did not breach its plea agreement, and Arias waived his right to appeal the district court's imposition of the managerial-role enhancement. So we affirm his sentence.

# I.    BACKGROUND

## A.  Factual Background[1]

Arias, a Colombian citizen, belonged to a transnational drug-trafficking organization that concealed drugs in computers, car batteries, solar panels, and other items before shipping them internationally.  Segis Oswaldo Linares Nino was the leader of the conspiracy.  And Jorge Andres Gomez Vallejo performed deliveries on Linares Nino's orders.  As for Arias's role, he picked up cocaine from suppliers in Colombia and coordinated shipments to the United States.

After a shipping company seized some of the organization's packages, Jose Giraldo, a confidential informant, told Arias that he had a contact that could help the organization ship drugs without detection.  Giraldo reported the organization's shipments, and they were sent to an undercover agent in Florida.  Between April 2016 and May 2017, law enforcement seized over 500 grams of cocaine and over 100 grams of heroin connected to the conspiracy.

In or around March 2017, Linares Nino asked Giraldo about shipping cocaine from Colombia to Australia, Dubai, and New Guinea.  When the organization later sought to make a cocaine shipment to Australia, Giraldo told Arias that such a package would have to be shipped to the United States first.  Arias then sent a package to a shipping facility in Pereira, Colombia.  Colombian

---

[1] We recount the facts as stipulated by the parties in the plea agreement.

National Police officers opened the package and found roughly 990 grams of cocaine, concealed in three large batteries.

Giraldo then introduced Linares Nino and Arias to his "contact," who was actually an undercover agent. Arias, Linares Nino, and Vallejo met with Giraldo and the "contact" in Pereira. At that meeting, the conspirators asked for help shipping liquid cocaine in wine bottles. Arias also asked for help shipping heroin concealed in computers.

Then, Arias, Linares Nino, Vallejo, and others delivered two large wooden crates to Giraldo and the undercover agent to ship to Tampa, Florida. A search of the crates revealed more than 500 grams of cocaine and more than 500 grams of liquid cocaine.

In February 2018, a federal grand jury returned a four-count indictment. The indictment charged Arias and eight codefendants[2] with conspiring to distribute and possess with the intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine, knowing and intending that the heroin and cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959.

---

[2] Six of those codefendants pled guilty. Linares Nino's charges were dismissed because he had advanced-stage terminal cancer and later died.

### B. Plea Agreement and Change-of-Plea Hearing

Through a plea agreement, Arias pled guilty to the conspiracy charge but to a lesser-included drug quantity: 100 grams or more of heroin and 500 grams or more of cocaine.

For its part, the Government agreed to recommend a within-Guidelines-range sentence. It also agreed not to oppose a two-level acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1(a), if, by sentencing, "no adverse information [was] received suggesting such a recommendation to be unwarranted." And it agreed to move for an additional one-level acceptance-of-responsibility reduction if Arias "complie[d] with the provisions of U.S.S.G. § 3E1.1(b) and all terms of" the plea agreement. That compliance determination "rest[ed] solely with the United States Attorney," and Arias agreed that he could not and would not challenge it. The Government further reserved its right to report "all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, . . . to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies."

The plea agreement also contained an appeal waiver. Under that provision, Arias could appeal his sentence only on the grounds that it [1] "exceeds the . . . applicable guidelines range," [2] "exceeds the statutory maximum penalty," or [3] "violates the Eighth Amendment to the Constitution." Arias could not appeal "on any

[other] ground, including the ground that the Court erred in determining the applicable guidelines range."

At his change-of-plea hearing, Arias confirmed that he had read, understood, and signed the plea agreement, after reviewing it with his attorney. The district court specifically questioned Arias about the appeal waiver, and Arias replied, "I understand." Arias then entered his guilty plea and admitted the facts in the plea agreement, though he reserved the right to challenge the drug quantity at sentencing. The district court found that Arias entered his plea knowingly, voluntarily, and with a sufficient factual basis, so the court accepted the plea.

## C. Sentencing

Arias's Presentence Investigation Report ("PSI") set the base offense level at 38 and Guidelines custodial range at 235 to 293 months. The PSI included a three-level acceptance-of-responsibility reduction, *see* U.S.S.G. § 3E1.1, and a three-level managerial-role enhancement, *see id.* § 3B1.1(b). Arias objected to the managerial-role enhancement, among other objections. Instead, he sought safety-valve relief, *see* 18 U.S.C. § 3553(f), and a minor-role adjustment, *see* U.S.S.G. § 3B1.2(b).

At the first sentencing hearing, defense counsel reiterated his objection to the managerial-role enhancement, maintaining that Giraldo, not Arias, was an "organizer and leader" of the drug-trafficking conspiracy. Defense counsel also challenged the drug quantities in the PSI, but the parties later agreed to a base offense level

of 34. The Government requested a continuance to ensure that it had discharged its *Brady*[3] obligations.

At the second sentencing hearing, the Government called Special Agent Casey Albanese, the lead agent in the investigation of the drug-trafficking conspiracy, as a witness. Albanese testified that three of Arias's codefendants—Juan David Rincon Enriquez, Santiago Cardona Marin, and Diego Alejandro Corrales Velasquez—told law enforcement that Arias recruited them to join the conspiracy. Enriquez and Marin invested money in the enterprise, while Enriquez and Velasquez packaged drugs for shipment. Albanese also testified that Vallejo and Linares Nino operated the drug-trafficking organization at the highest level, and Arias introduced Giraldo to Linares Nino and Vallejo. According to Albanese, after that introduction, the quantity of drugs shipped increased.

Arias also testified. He admitted that Marin and Enriquez "put the money in to buy materials [and] drugs for shipment." But he denied three material facts. First, Arias denied that Vallejo introduced him to Linares Nino for investment in cocaine and heroin shipments to the United States, claiming instead that the drugs were intended for Australia. Arias said that the organization "did not want to send drugs to the United States," but Giraldo told them the drugs would be shipped to Australia through Chile. Second, Arias denied asking for help shipping heroin concealed in computers, saying that he was not in charge of the heroin. Third, Arias

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

denied that he had provided shipping instructions that included an address in Tampa, claiming instead that the crates were "going to Australia." Though Arias had admitted the opposite of each of these statements in his plea agreement, he testified that those admissions were "not true." He said he "did not want to sign" the plea agreement but "accepted" and "agreed" to it.

The district court noted that Arias had "den[ied] what he admitted is true in the Plea Agreement." It continued the sentencing hearing so it could review the record.

After that hearing, the Government withdrew its recommendation of an acceptance-of-responsibility reduction, contending that Arias had violated his plea agreement by testifying falsely under oath. Such false testimony, the Government argued, was "adverse information" that counseled against a reduction.

At the third and final sentencing hearing, the district court reduced Arias's base offense level to 32 but imposed the three-level managerial-role enhancement. It found the enhancement "appropriate" because Arias "recruited these three people in as investors and to help him with the storing of the cocaine."

As for the acceptance-of-responsibility reduction, the district court reasoned that Arias had "clear[ly]" testified differently than the factual basis to which he agreed at his change-of-plea hearing, "maybe" in "an attempt to downplay his own responsibility." Still, it granted a two-level reduction. The Government did not move for the third-point reduction, which the district court stated it could not impose "unless the Government moves." Defense counsel

objected, arguing that the Government's failure to move for the third-point reduction breached the plea agreement. The district court overruled that objection.

Arias's final offense level was 35, with a Guidelines custodial range of 168 to 210 months. The district court found that a downward variance was warranted because it had sentenced codefendant Vallejo to 151 months. So it sentenced Arias to 151 months of incarceration, followed by five years of supervised release. And it noted that Arias had "waived [his] right to appeal in this matter."

## II.    DISCUSSION

On appeal, Arias argues that the Government breached the plea agreement by failing to move for the third-point acceptance-of-responsibility reduction. And he challenges the district court's imposition of the managerial-role enhancement. Arias's first argument fails, and the appeal waiver bars his second.

> *A. The Government did not breach the plea agreement by declining to move for the third-point acceptance-of-responsibility reduction.*

We review de novo whether the Government breached its plea agreement. *See United States v. Copeland*, 381 F.3d 1101, 1104 (11th Cir. 2004). We "set aside" the district court's factual findings as to the scope of the agreement "only if they are clearly erroneous." *Id.* at 1105.

"A material promise by the [G]overnment, which induces a defendant to plead guilty, binds the [G]overnment to that promise."

*United States v. Thomas*, 487 F.3d 1358, 1360 (11th Cir. 2007) (per curiam) (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)). The Government breaches its plea agreement "when it fails to perform the promises on which the plea was based." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016). We determine those promises "according to the defendant's reasonable understanding at the time he entered his plea" rather than reading the plea agreement "in a hyper-technical or rigidly literal manner." *Id.* (citations and internal quotation marks omitted). A "promise to recommend" an acceptance-of-responsibility reduction may be a "key material concession made by the [G]overnment" and a "significant factor in [a defendant's] decision to accept the plea agreement." *Id.* at 1325.

A two-level reduction is warranted only "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Evidence of acceptance of responsibility includes "truthfully admitting the conduct comprising the offense of conviction" and "truthfully admitting or not falsely denying any additional relevant conduct." *Id.* § 3E1.1 cmt. n.3. As we have emphasized, "the reduction is intended to reward defendants who express contrition for their wrongdoing and evidence a desire to reform their conduct." *United States v. Williams*, 627 F.3d 839, 844 (11th Cir. 2010). And while a guilty plea "will typically constitute significant evidence of acceptance of responsibility, 'this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.'" *United States v. Mathews*, 874 F.3d 698, 709 (11th Cir. 2017) (quoting U.S.S.G. § 3E1.1 cmt. n.3).

The Guidelines also permit a third-point reduction if "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial." U.S.S.G. § 3E1.1(b). "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial," a district court can grant a third-point reduction only upon the Government's motion. *Id.* § 3E1.1 cmt. n.6.

As a threshold matter, Arias's appeal waiver "does not bar [his] claim that the [G]overnment breached the plea agreement." *Hunter*, 835 F.3d at 1324. So we begin by determining the scope of the Government's promises. *See id.* Here, the determination as to whether Arias "complie[d]" with the requirements for the third-point acceptance-of-responsibility reduction "rest[ed] solely with the" Government. In other words, the Government retained the discretion not to move for the third-point reduction if, in its view, Arias did not keep his promises.

And, again, those promises were to "compl[y] with the provisions of U.S.S.G. § 3E1.1(b) and all terms of" the plea agreement. Beginning with the plea agreement, Arias agreed "to testify . . . fully and truthfully before any federal court proceeding . . . in connection with the charges in this case and other matters."

Arias argues that these sections of the plea agreement "do not apply" because he was not "cooperating" with the Government at the time of sentencing. That argument fails. The acceptance-

of-responsibility provision expressly required Arias to comply with "all terms of" the plea agreement. And we enforce unambiguous plea agreements according to their plain terms. *See Copeland*, 381 F.3d at 1106. The heading assigned those terms ("Cooperation") did not absolve Arias of that responsibility.

Given the conflicts between Arias's admissions in the plea agreement (and by extension, at the change-of-plea hearing) and his testimony at sentencing, Arias's testimony at one of those proceedings was necessarily untruthful. So he failed to "compl[y] with . . . all terms of" the plea agreement.

What's more, Arias also failed to "compl[y] with the provisions of U.S.S.G. § 3E1.1(b)." The third-point reduction under § 3E1.1(b) is available only if the defendant qualifies under § 3E1.1(a), meaning he must "clearly demonstrate[] acceptance of responsibility for his offense." By repudiating many of the facts to which he had stipulated, including his role in importing the drugs into the United States, Arias acted in a manner "wholly inconsistent with any acceptance of responsibility." *See Williams*, 627 F.3d at 844. He was thus not entitled to an acceptance-of-responsibility reduction. *See id.*; *see also United States v. Rubio*, 317 F.3d 1240, 1244 (11th Cir. 2003) (affirming denial of acceptance-of-responsibility reduction where defendant "consistently attempted to minimize his role, despite . . . evidence to the contrary"); *United States v. Caraballo*, 595 F.3d 1214, 1233 (11th Cir. 2010) (same).

Because Arias failed to comply with either U.S.S.G. § 3E1.1(b) or the plea agreement's plain terms, the Government was

not required to move for a third-point reduction.  *See United States v. Mahique*, 150 F.3d 1330, 1332 (11th Cir. 1998) (per curiam) (finding no breach where the Government did not recommend a reduction because the plea agreement was "conditioned on" requirement of "full and accurate disclosure," which the defendant did not meet); *United States v. Brockman*, 924 F.3d 988, 992, 995 (8th Cir. 2019) (same, where the Government declined to move for a third-point reduction based on the defendant's "recalcitrance and arguments contrary to his plea in the case," requiring the Government to expend "extra time and expense and preparation for the sentencing hearing").  And "the district court's generous award of a two-level reduction [did] not compel the [G]overnment to move for a third." *Brockman*, 924 F.3d at 995 (citation and internal quotation marks omitted).

In sum, the Government did not breach the plea agreement, and Arias is not entitled to resentencing or to withdraw his plea.

### B. *Arias waived his right to appeal the district court's imposition of the managerial-role enhancement.*

We turn now to Arias's challenge to the managerial-role enhancement.  We conclude that Arias's appeal waiver precludes our review of that claim.

"[S]entence appeal waivers, made knowingly and voluntarily, are enforceable." *United States v. Bushert*, 997 F.2d 1343, 1345 (11th Cir. 1993).  We will enforce an appeal waiver if "either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is

manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Id.* at 1351. And we review the validity of an appeal waiver de novo. *Id.* at 1352.

Here, Arias's plea waiver meets the requirements. At the change-of-plea hearing, the district court specifically questioned Arias about the appeal waiver, stating, "You may not like the sentence I impose, but by entering into the plea agreement, you're waiving your right to appeal that sentence." It explained the "three exceptions" then asked Arias if he understood. Arias replied, "I understand," and he confirmed that he had discussed the waiver with counsel. And Arias otherwise affirmed that he had read, understood, and signed the plea agreement, after reviewing it with his attorney. On this record, the appeal waiver is valid and enforceable.

As such, we can review Arias's challenge to the managerial-role enhancement only if it falls within the appeal waiver's three exceptions. Again, those exceptions were that the sentence [1] "exceeds the . . . applicable guidelines range," [2] "exceeds the statutory maximum penalty," or [3] "violates the Eighth Amendment to the Constitution." Arias could not appeal "on any [other] ground, including the ground that the Court erred in determining the applicable guidelines range."

Arias's objection to the managerial-role enhancement does not fall within any of the three exceptions; rather, it is an argument that the district court "erred in determining the applicable guidelines range." So the plea agreement's plain terms bar our review of that claim.

Even if the appeal waiver did not bar Arias's claim, we have repeatedly upheld district courts' imposition of role enhancements where defendants, like Arias, "had recruited participants, had instructed participants, or had wielded decision-making authority." *Caraballo*, 595 F.3d at 1231; *see also United States v. Thomas*, 446 F.3d 1348, 1355 n.2 (11th Cir. 2006) ("the role enhancement was supported by [a detective's] testimony that [defendant] recruited the others and [a co-defendant's] testimony that [defendant] recruited him"); *United States v. Jones*, 933 F.2d 1541, 1546–47 (11th Cir. 1991) (defendant's "subordinate role" to codefendant did not "absolve [him] of the supervisory role he played in coordinating and managing the delivery and transportation of [drugs] from Jamaica into the United States"); *United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006) (affirming four-level aggravating-role enhancement where defendant "exercised authority over the organization by recruiting and instructing co-conspirators"). So while we do not reach the merits of Arias's challenge, it would likely fail in any event.

## III.    CONCLUSION

For these reasons, we affirm Arias's sentence.

**AFFIRMED.**